UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL RAY MAXWELL,<br>Petitioner,<br>v.<br>WARDEN RENEE BAKER, *et al.*,<br>Respondents. | Case No. 3:19-cv-00201-MMD-CLB<br>ORDER |

**I.  SUMMARY**

Petitioner Michael Maxwell filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This matter is before this Court for adjudication of the merits of Maxwell's petition. (ECF No. 4 ("Petition").) For the reasons discussed below, this Court denies both the Petition and a certificate of appealability.

**II.  BACKGROUND**

Maxwell's convictions are the result of events that occurred in Nye County, Nevada on, about, or between May 1, 2011, and May 2, 2011. (ECF No. 13-39.) In an information filed in state district court, the State alleged that Maxwell and four co-defendants murdered Michael Frasher and attempted to murder Antionette Belle. (*Id.*) Following a guilty plea, Maxwell was adjudged guilty of solicitation to commit murder with the use of a deadly weapon, attempted theft, unlawful use of a controlled substance, and theft of services. (ECF Nos. 13-40, 13-54.) Maxwell was sentenced to 72 to 180 months for the solicitation to commit murder conviction plus a consecutive term of 40 to 180 months for the deadly weapon enhancement; 24 to 60 months for the attempted theft conviction; 19 to 48 months for the use of a controlled substance conviction; and 24 to 60 months for the theft of services conviction. (ECF No. 13-54.) Maxwell appealed,

and the Nevada Supreme Court affirmed on March 14, 2013. (ECF No. 14-10.) Remittitur issued on April 9, 2013. (ECF No. 14-12.)

Maxwell filed his pro se state habeas petition on December 31, 2013, and his counseled supplemental petition on January 10, 2018. (ECF Nos. 14-17, 14-30.) The state district court denied the petition on April 3, 2018. (ECF No. 14-34.) Maxwell appealed, and the Nevada Supreme Court affirmed on March 14, 2019. (ECF No. 14-48.) Remittitur issued on April 10, 2019. (ECF No. 14-51.)

Maxwell filed his pro se Petition on April 23, 2019, alleging the following violations of his federal constitutional rights:

1. His trial counsel induced him to plead guilty to a charge that included an illegal sentencing enhancement.
2a. His trial counsel failed to object to the deadly weapon enhancement at sentencing, and his appellate counsel failed to raise the same in his direct appeal.
2b. His trial counsel failed to assert that the State's comments at his sentencing breached the plea agreement, and his appellate counsel failed to raise the same in his direct appeal.
2c. His trial counsel failed to object to the state district court's lack of findings regarding his sentence, and his appellate counsel failed to raise the same in his direct appeal.
2d. His trial counsel failed to object to the State requesting that the state district court take notice of evidence from other proceedings during his sentencing, and his appellate counsel failed to raise the same in his direct appeal.
3. There was cumulative error regarding the ineffectiveness of his trial counsel and his appellate counsel.

(ECF No. 4.) Respondents answered the Petition on August 21, 2019, and Maxwell replied on September 19, 2019. (ECF Nos. 12, 15.)

**III.  LEGAL STANDARD**

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

> to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings,

3

1 which demands that state-court decisions be given the benefit of the doubt") (internal
2 quotation marks and citations omitted).

3 **IV.    DISCUSSION**

4 Maxwell's Petition alleges that his trial and appellate counsel were ineffective.
5 (*See* ECF No. 4 at 3-16.) In *Strickland*, the Supreme Court propounded a two-prong test
6 for analysis of claims of ineffective assistance of counsel requiring the petitioner to
7 demonstrate (1) that the attorney's "representation fell below an objective standard of
8 reasonableness," and (2) that the attorney's deficient performance prejudiced the
9 defendant such that "there is a reasonable probability that, but for counsel's
10 unprofessional errors, the result of the proceeding would have been different." *Strickland*
11 *v. Washington*, 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective
12 assistance of counsel must apply a "strong presumption that counsel's conduct falls
13 within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's
14 burden is to show "that counsel made errors so serious that counsel was not functioning
15 as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.
16 Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas
17 petitioner "to show that the errors had some conceivable effect on the outcome of the
18 proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the
19 defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

20 When the ineffective assistance of counsel claim is based on a challenge to a
21 guilty plea, the *Strickland* prejudice prong requires the petitioner to demonstrate "that
22 there is a reasonable probability that, but for counsel's errors, he would not have
23 pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52,
24 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas
25 a defendant must show the outcome of the plea process would have been different with
26 competent advice."). And when the ineffective assistance of counsel claim is based on
27 an appellate counsel's actions, a petitioner must show "that [appellate] counsel
28 unreasonably failed to discover nonfrivolous issues and to file a merits brief raising

4

them" and then "that, but for his [appellate] counsel's unreasonable failure to file a merits brief, [petitioner] would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the United States Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### A. Ground 1

In Ground 1, Maxwell alleges that his federal constitutional rights were violated because his trial counsel induced him to plead guilty to solicitation to commit murder with the use of a deadly weapon even though the deadly weapon enhancement is prohibited by Nevada law from being applied to the crime of solicitation. (ECF No. 4 at 3.) Respondents contend that Maxwell's trial counsel acted reasonably because Nevada law does allow the deadly weapon enhancement to be applied to the crime of solicitation, or, alternatively, the deadly weapon enhancement was at least presumptively allowed to be applied to the crime of solicitation at the time of the guilty plea agreement negotiations. (ECF No. 12 at 13.) In affirming the denial of his state habeas petition, the Nevada Supreme Court held:

> Maxwell argues that the district court erred in denying his claim that counsel induced him to plead guilty to an illegal sentencing enhancement. Relying

on *Moore v. State*, 117 Nev. 659, 660-63, 27 P.3d 447, 449-50 (2001), he asserts that solicitation, like conspiracy, cannot be enhanced with a deadly weapon enhancement. [Footnote 1: Maxwell asserts that *Hidalgo v. Eighth Judicial Dist. Court*, 124 Nev. 330, 184 P.3d 369 (2008), also supports his argument. We disagree. In *Hidalgo*, this court concluded that solicitation of a violent crime is not "[a] felony involving the use or threat of violence to the person of another" as described in NRS 200.033(2)(b). The decision did not address whether a deadly weapon can be used during solicitation.] We conclude that Maxwell failed to demonstrate that counsel's performance fell below an objective standard of reasonableness, and but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d 1102, 1107 (1996); see *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Maxwell has not cited any binding authority upon which trial counsel could have relied to advise him that solicitation to commit murder could not be enhanced under NRS 193.165. He suggests that counsel should have advised him that solicitation to commit murder could not be enhanced under NRS 193.165 based on an extension of the reasoning in *Moore*. As the district court explained, there are sound arguments against extending *Moore* to solicitation. Notably, the solicitation statute prohibits the commanding of someone to commit an unlawful act, which could feasibly be achieved with the use of a deadly weapon. NRS 199.500(1), (2). Given the state of the law at the time and tenuous nature of an argument based on *Moore*, it would not have been objectively unreasonable for counsel not to advise Maxwell that an enhancement of the solicitation conviction under NRS 193.165 would be infirm or illegal. *See Allen v. United States*, 829 F.3d 965, 968 (8th Cir. 2016) ("[T]he failure of counsel to argue for an extension of the law or a novel interpretation of circuit precedent is not constitutionally deficient performance."). Therefore, the district court did not err in concluding that counsel did not perform deficiently.

We further conclude that Maxwell failed to demonstrate prejudice—a reasonable probability that he would have rejected the plea agreement and instead gone to trial. Even assuming the legal premise of Maxwell's ineffective-assistance claim is correct, that solicitation to commit murder cannot be enhanced under NRS 193.165, Maxwell could still agree to the enhancement as part of the plea agreement. *See Breault v. State*, 116 Nev. 311, 314, 996 P.2d 888, 889 (2000) (holding that a defendant who knowingly and voluntarily agrees to an infirm sentence pursuant to plea negotiations, waives such infirmity pursuant to the negotiations and may not later claim the sentence was infirm). And he has not demonstrated reasonable probability that he would not have done so. First, he has asked to be resentenced on the solicitation offense, not to be allowed to withdraw his guilty plea and go to trial on the original charges. Second, he received a significant benefit from the negotiated plea agreement in comparison to the risk of going to trial. In particular, as part of the plea agreement, the State dropped a number of additional serious charges: murder with the use

6

> of a deadly weapon, attempted murder with the use of a deadly weapon, accessory to murder with the use of a deadly weapon, and accessory to attempted murder with the use of a deadly weapon. Maxwell did not demonstrate that he would have forgone the benefits of the plea agreement and risked going to trial on the original, more serious charges just to avoid a single enhancement sentence included in the plea agreement. Therefore, the district court did not err in denying this claim.

(ECF No. 14-48 at 2-4.) The Nevada Supreme Court's rejection of Maxwell's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Although not included in the original information, the amended information filed before the entry of Maxwell's guilty plea charged him with solicitation to commit murder with the use of a deadly weapon. (*See* ECF Nos. 13-19, 13-29, 13-38 at 2.) And Maxwell's guilty plea agreement provided, in part, that he agreed to plead guilty to solicitation to commit murder with the use of a deadly weapon. (ECF No. 13-40 at 2.) This agreement was made in exchange for the State "forego[ing] the prosecution of any and all charges against [Maxwell] that included murder and attempted murder for directing the attack upon Michael Frasher and the resultant attack on Antionette Belle." (*Id.* at 3.) Thereafter, at his change of plea hearing, Maxwell pleaded guilty to solicitation to commit murder with the use of a deadly weapon. (ECF No. 13-41 at 14.)

Nevada's deadly weapon enhancement statute provides that "any person who uses a . . . deadly weapon . . . in the commission of a crime shall . . . be punished by imprisonment" for 1 to 20 years. NRS § 193.165(1). Maxwell contends that NRS § 193.165(1) cannot be applied to solicitation generally or in this case because (1) solicitation cannot be committed with the use of a deadly weapon because that would amount to extortion or coercion, (2) solicitation does not involve violence or fear even if the crime solicited is itself violent, and (3) there was no allegation in this case that the solicitation occurred with the use of a deadly weapon. (ECF No. 4 at 6.)

///

It is true that at the time of Maxwell's plea bargaining, the Nevada Supreme Court had "conclude[d] that it is improper to enhance a sentence for conspiracy using the deadly weapon enhancement." *Moore v. State*, 117 Nev. 659, 663, 27 P.3d 447, 450 (2001). And the Nevada Supreme Court had also concluded that "solicitation to commit murder, although it solicits a violent act, is not itself a felony involving the use or threat of violence." *Hidalgo v. Eighth Judicial Dist. Court*, 124 Nev. 330, 337, 184 P.3d 369, 374 (2008); *see also Nunnery v. Eighth Judicial Dist. Court*, 124 Nev. 477, 482, 186 P.3d 886, 889 (2008) ("[A]lthough conspiracy to commit robbery involves conspiring to commit a violent act, it is not itself a felony involving the use or threat of violence."). Even though these cases could have been used to make the argument that solicitation—a nonviolent felony—cannot be enhanced by Nev. Rev. Stat. § 193.165(1), that argument has not been contemplated or ruled on by the Nevada Supreme Court, as the Nevada Supreme Court reasonably noted in its affirmation of the denial of Maxwell's state habeas petition. As such, and given the uncertain nature of this legal argument, the Nevada Supreme Court reasonably determined that Maxwell failed to demonstrate that his trial counsel was deficient for not properly advising him of the charges to which he pleaded guilty. *See Strickland*, 466 U.S. at 688; *cf. Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) ("[C]ounsel have a duty to supply criminal defendants with necessary and accurate information.").[1]

Further, even if Maxwell's trial counsel was deficient, the Nevada Supreme Court also reasonably concluded that Maxwell failed to demonstrate prejudice. *See Strickland*,

---

[1] To the extent that Maxwell asserts that Nevada law cannot not or should not allow the deadly weapon enhancement to be applied to solicitation to commit murder, this Court notes that that issue is a question for the Nevada Supreme Court, the final arbiter of Nevada state law, and is not the subject of federal habeas review. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").

466 U.S. at 694. Importantly, Maxwell requests that this Court "strike the illegal deadly weapon enhancement portion of his sentence." (ECF No. 4 at 7.) This request, along with the fact that Maxwell received a substantial benefit from the plea-bargaining process,[2] which were both reasonably noted by the Nevada Supreme Court, negates a determination that Maxwell would have insisted on going to trial absent his trial counsel's alleged error. *See Hill*, 474 U.S. at 59. Thus, because the Nevada Supreme Court reasonably denied Maxwell's ineffective-assistance-of-trial-counsel claim, Maxwell is denied federal habeas relief for Ground 1.

### B. Ground 2a

In Ground 2a, Maxwell alleges that his federal constitutional rights were violated because his trial counsel failed to object to the deadly weapon enhancement at his sentencing, and his appellate counsel failed to raise the same in his direct appeal. (ECF No. 4 at 10.) In affirming the denial of his state habeas petition, the Nevada Supreme Court held:

> Maxwell argues that counsel should have objected to the deadly weapon enhancement at sentencing and challenged it on appeal. As Maxwell agreed to the enhancement when he pleaded guilty, Maxwell failed to demonstrate that counsel performed deficiently at sentencing or on appeal or that either challenge would have had a reasonable likelihood of success at the sentencing hearing or on appeal. [Footnote 2: Maxwell also argues that the enhancement was not included in the plea agreement, however, the record demonstrates that the State filed an errata to the plea agreement discussing the enhancement and it was addressed during the plea canvass.]

(ECF No. 14-48 at 5.) The Nevada Supreme Court's rejection of Maxwell's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

///

---

[2]Maxwell was originally charged with murder with the use of a deadly weapon, attempted murder with the use of a deadly weapon, accessory to murder with the use of a deadly weapon, and accessory to attempted murder with the use of a deadly weapon. (ECF No. 13-19 at 4-8.)

9

As was explained in Ground 1, Maxwell pleaded guilty to the charge of solicitation to commit murder with the use of a deadly weapon. (ECF No. 13-41 at 14.) And the state district court thereafter sentenced Maxwell on that charge. (*See* ECF No. 13-53 at 18.) Maxwell fails to articulate why—in the face of his plea agreement—his trial counsel was deficient for not objecting to the deadly weapon enhancement at his sentencing or his appellate counsel was deficient for failing to raise the same on direct appeal. *See Jones v Gomez*, 66 F.3d 199, 205 (9th Cir. 1995). To the extent that Maxwell reasserts the arguments posited in Ground 1, this Court has already rejected those arguments. Therefore, because the Nevada Supreme Court reasonably denied Maxwell's ineffective-assistance-of-trial-counsel and ineffective-assistance-of-appellate-counsel claims, Maxwell is denied federal habeas relief for Ground 2a.

### C. Ground 2b

In Ground 2b, Maxwell alleges that his federal constitutional rights were violated because his trial counsel failed to assert that the State's comments at his sentencing hearing breached the plea agreement, and his appellate counsel failed to raise the same in his direct appeal. (ECF No. 4 at 10.) Specifically, Maxwell takes issue with the State's comment that the state district court impose "nothing less" than the maximum sentence, which, according to Maxwell, implies that the state district court should exceed the State's recommendation. (*Id.*) In affirming the denial of his state habeas petition, the Nevada Supreme Court held:

> Maxwell argues that counsel should have asserted that the State violated the plea agreement. We disagree. The State's arguments during sentencing did not violate its obligations under the plea agreement. Therefore, counsel were not deficient for declining to assert that the State breached the agreement and Maxwell failed to demonstrate any objection or argument on appeal would have been successful.

(ECF No. 14-48 at 5.) The Nevada Supreme Court's rejection of Maxwell's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

///

At Maxwell's change of plea hearing, the State explained that it would "recommend that the [a]ttempt [t]heft, [u]nlawful [u]se of a [c]ontrolled [s]ubstance, and the [t]heft of [e]lectricity . . . run concurrent on anything that he gets on the [s]olicitation to [c]ommit [m]urder with [u]se of a [d]eadly [w]eapon." (ECF No. 13-41 at 6.) Further, the State explained that it was "free to argue the [s]olicitation to [c]ommit [m]urder [w]ith [u]se of a [d]eadly [w]eapon." (*Id.*) These explanations were also reflected in the guilty plea agreement. (*See* ECF No. 13-40 at 3.) Sixth months later, at Maxwell's sentencing hearing, the State reiterated the facts of the case and then commented that Maxwell "should get nothing less than what we are recommending," which the State detailed was 15 years for the solicitation, 15 years for the enhancement, and the maximum sentences for Maxwell's three other charges. (ECF No. 13-53 at 15-16.) The State also clarified that the sentences on Maxwell's three other charges should "run concurrent to the [s]olicitation [w]ith [u]se counts consistent with the agreement as detailed during the plea canvass and as written before this Court." (*Id.* at 16.)

It is true that, pursuant to Nevada law, "[w]hen the State enters into a plea agreement, it is held to the most meticulous standards of both promise and performance with respect to both the terms and the spirit of the plea bargain." *Sparks v. State*, 121 Nev. 107, 110, 110 P.3d 486, 487 (2005) (internal quotation marks omitted). However, as the Nevada Supreme Court reasonably determined, Maxwell fails to demonstrate that the State's arguments during his sentencing hearing violated the terms of the plea agreement. The State's comment that Maxwell should be sentenced to "nothing less than what we are recommending" (ECF No. 13-53 at 16) was within the bounds of the plea agreement. Contrary to Maxwell's assertions, this comment does not request that Maxwell's sentence exceed the recommendation; rather, it simply requests that Maxwell's sentence not fall below the recommendation. And the fact that the state district court "ordered that all counts run consecutive to each other" (*see* ECF No. 13-54 at 3) reflects the state district court's sentencing power, not an indication of an improper argument by the State. Accordingly, the Nevada Supreme Court reasonably determined

1 | that Maxwell's trial counsel was not deficient for not objecting to the State's unobjectionable comment and his appellate counsel was not deficient for not raising the same in his direct appeal. *See Strickland*, 466 U.S. at 688; *Smith*, 528 U.S. at 285. Maxwell is denied federal habeas relief for Ground 2b.

### D. Ground 2c

In Ground 2c, Maxwell alleges that his federal constitutional rights were violated because his trial counsel failed to object to the state district court's lack of findings regarding his sentence, and his appellate counsel failed to raise the same in his direct appeal. (ECF No. 4 at 10-11.) Maxwell contends that had his trial counsel objected, "there is a reasonable probability of a more favorable sentencing." (*Id.* at 11.) In affirming the denial of his state habeas petition, the Nevada Supreme Court held:

> Maxwell argues that trial and appellate counsel should have challenged the district court's failure to justify the enhancement sentence based on the factors set forth in NRS 193.165. Before imposing a sentence for a deadly weapon enhancement, the sentencing court must consider the factors enumerated in NRS 193.165. *Mendoza-Lobos v. State*, 125 Nev. 634, 644, 218 P.3d 501, 507 (2009). The district court did address the circumstances of the crime and Maxwell's motivation to commit it. *See* NRS 193.165(1)(a), (e). While the court did not address the other enumerated factors, the record indicates that it exercised its discretion in accordance with the statute. *See Hughes v. State*, 116 Nev. 327, 333, 996 P.2d 890, 893 (2000) (noting that "this court has never required the district courts to utter 'talismanic' phrases" and instead "looks to the record as a whole to determine whether the sentencing court actually exercised its discretion"). The failure to explain the ruling more completely does not render it constitutionally defective. *See, e.g.*, *Arizona v. Washington*, 434 U.S. 497, 516-17 (1978). Therefore, Maxwell failed to demonstrate that counsel were deficient for failing to challenge his sentence on this basis or that the challenge would have been successful.

(ECF No. 14-48 at 5-6.) The Nevada Supreme Court's rejection of Maxwell's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

Before handing down Maxwell's sentence, the state district court explained the basis for its decision:

> I don't quite comprehend the reasons for the crimes that occurred, but I don't comprehend when somebody goes into Wal-Mart to steal a $40 stereo, why they would do such a thing.
>
> And of course I can't comprehend why you would do such a thing in this case. Very extreme for the goal, which my understanding from the testimony of the witnesses, the goal was so that you could take over the Pahrump drug market and be the top man in charge of Pahrump and who gets to deal and so forth.
>
> And I can understand desperate people or unintelligent people or people that lack morals and ethics or whatever. I can understand people wanting to control the Pahrump drug market. I understand that. The lucrative big, huge, Pahrump drug market where all that money is to be made. But I don't understand achieving it in the way that you achieved it. And I'll never be able to understand that.
>
> Even in the next life when the Lord is explaining it to everybody, I won't be able to comprehend and understand why something like this would be done. For a man who supposedly is intelligent to lead such a conspiracy and solicitation, you would think you could have come up with better ways to become the ruler of the Pahrump drug market. I think I could have, and I'm not even into the criminal stuff.
>
> But maybe from your perspective, you need to take a couple of people down to let everybody else know you're in charge. I don't know, I'm just speculating right now. Maybe someday I will get to find out what the thought process was, the reason. But to me it's extreme. And therefore, it requires an extreme sentence.

(ECF No. 13-53 at 17-18.)

Nevada law provides that a state district court "shall consider the following" factors "[i]n determining the length of the additional penalty imposed" for the deadly weapon enhancement: "(a) [t]he facts and circumstances of the crime; (b) [t]he criminal history of the person; (c) [t]he impact of the crime on any victim; (d) [a]ny mitigating factors presented by the person; and (e) [a]ny other relevant information." NRS § 193.165(1). The statute also provides that "[t]he court shall state on the record that it has considered the information described in paragraphs (a) to (e), inclusive, in determining the length of the additional penalty imposed." *Id.* And the Nevada Supreme Court has "direct[ed] the district courts to make findings regarding each factor

enumerated in NRS 193.165(1) . . . when imposing a sentence for a deadly weapon enhancement." *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009).

Maxwell is correct that the state district court did not strictly abide by the requirements of NRS § 193.165(1). However, the Nevada Supreme Court reasonably noted that, pursuant to Nevada law, this failure does not amount to an automatic granting of relief. In fact, in *Mendoza-Lobos*, the Nevada Supreme Court concluded that a state district court's failure to comply with the directives of NRS § 193.165(1) did not warrant the granting of relief if the "omission did not cause any prejudice or a miscarriage of justice." 218 P.3d at 508; *see also Hughes v. State*, 996 P.2d 890, 893 (2000) (explaining that "this court has never required the district courts to utter 'talismanic' phrases" when sentencing a defendant). The Nevada Supreme Court also reasonably noted that the failure to fully comply with NRS § 193.165(1) does not render a defendant's sentence constitutionally invalid. *See Arizona v. Washington*, 434 U.S. 497, 516-17 (1978) ("Since the record provides sufficient justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective.").

Thus, although it may have been prudent for his trial counsel to have objected to the state district court's failure to abide by the requirements of NRS § 193.165(1), the Nevada Supreme Court reasonably determined that Maxwell fails to demonstrate prejudice. *See Strickland*, 466 U.S. at 694. Maxwell's contention that the state district court would have changed his sentence based on a procedural objection made by his trial counsel is mere speculation, especially since the state district court explained that it was sentencing Maxwell harshly due to his crimes being unexplainable and extreme. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). And due to the Nevada Supreme Court's holdings in *Mendoza-Lobos*, in *Hughes*, and in Maxwell's state habeas appeal, Maxwell fails to demonstrate that the Nevada Supreme Court would have granted his direct appeal had

his appellate counsel included this issue. *See Smith*, 528 U.S. at 285. Maxwell is denied federal habeas relief for Ground 2c.

### E. Ground 2d

In Ground 2d, Maxwell alleges that his federal constitutional rights were violated because his trial counsel failed to object to the State requesting that the state district court take notice of victim impact evidence from other proceedings during his sentencing, and his appellate counsel failed to raise the same in his direct appeal. (ECF No. 4 at 12.) Maxwell contends that he was prejudiced by this error because "he received a substantially longer sentence than [that] recommended by the State." (*Id.*) In affirming the denial of his state habeas petition, the Nevada Supreme Court held:

> Maxwell asserts that counsel should have objected to the district court's decision to consider victim impact evidence introduced in a prior proceeding. We conclude that Maxwell failed to demonstrate deficient performance or prejudice. The district court stated that its familiarity with the facts stemmed from the hearings conducted in this case. Moreover, the district court based its sentencing decision on the circumstances of the crime and Maxwell's motives, not the victim impact evidence.

(ECF No. 14-48 at 6.) The Nevada Supreme Court's rejection of Maxwell's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.

At Maxwell's sentencing hearing, the State indicated that it "ha[d] two victims that . . . stepped out." (ECF No. 13-53 at 13.) The State then explained that the victim's sister and father were present in the courtroom but that an ambulance had to be called for the father because he was experiencing "stress and strain." (*Id.* at 14.) Because these two individuals would not be testifying, the State "ask[ed] th[e] Court to recall the[ir] testimony" from Maxwell's codefendants' sentencing hearings. (*Id.*) Maxwell's trial counsel did not object. (*See id.* at 15.) Later, in explaining the basis for its sentence, the state district court commented: "I'm familiar with the facts because of all the times the witnesses have testified at different hearings that we've had." (*Id.* at 17.)

///

"Victim impact evidence is simply [a] form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). And in Nevada, a victim is allowed "an opportunity to . . . [r]easonably express any views concerning the crime, the person responsible, the impact of the crime on the victim and the need for restitution." NRS § 176.015(3)(b). A victim is permitted to "[a]ppear personally, by counsel or by personal representative." Nev. Rev. Stat. § 176.015(3)(a).

While the victim's sister and father did not present standard victim impact evidence at Maxwell's sentencing hearing pursuant to NRS § 176.015, the Nevada Supreme Court reasonably concluded that Maxwell's trial counsel was not deficient for not objecting to the state district court considering their statements from a different proceeding. *See Strickland*, 466 U.S. at 688. Indeed, Maxwell fails to cite any authority disallowing such consideration under Nevada law. Rather, the Nevada Supreme Court has explained that "[t]he sentencing proceeding is not a second trial and the court is privileged to consider facts and circumstances which clearly would not be admissible at trial." *Silks v. State*, 92 Nev. 91, 93-94, 545 P.2d 1159, 1161 (1976) (concluding that "[s]o long as the record does not demonstrate prejudice resulting from consideration of information or accusations founded on facts supported only by impalpable or highly suspect evidence, this court will refrain from interfering with the sentence imposed."); *see also Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) ("[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics."). Accordingly, the Nevada Supreme Court reasonably determined that Maxwell's trial counsel was not deficient for not

objecting to aptly presented victim impact evidence and his appellate counsel was not deficient for not raising the same in his direct appeal. *See Strickland*, 466 U.S. at 688; *Smith*, 528 U.S. at 285. Maxwell is denied federal habeas relief for Ground 2d.

### F. Ground 3

In Ground 3, Maxwell alleges that his federal constitutional rights were violated due to the cumulative errors of his trial and appellate counsel. (ECF No. 4 at 15.) In affirming the denial of his state habeas petition, the Nevada Supreme Court held: "Maxwell argues that the cumulative effect of counsel's errors warrants relief. As we have found no error related to trial and appellate counsel, there is nothing to cumulate." (ECF No. 14-48 at 6.) This ruling was reasonable.

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). This Court has not identified any definite errors on the part of Maxwell's trial counsel, so there are no errors to cumulate. Maxwell is denied federal habeas relief for Ground 3.

### V. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Maxwell. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). Therefore, this Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or

wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying this standard, this Court finds that a certificate of appealability is unwarranted.

**VI.    CONCLUSION**

It is therefore ordered that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 by a person in state custody (ECF No. 4) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 12th Day of May 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE